**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

```
CODY MIYLER,                    )
                                )
        Plaintiff,               )
                                )
    v.                          )    No. 04-1128
                                )
VILLAGE OF EAST GALESBURG       )
                                )
        Defendant.              )
```

# **O R D E R**

Before the Court is Defendant Village of East Galesburg's ("the Village") Motion for Summary Judgment [Doc. #20]; Plaintiff Cody Miyler's ("Miyler") Response [Doc. #22]; and the Village's Reply [Doc. #23]. For the reasons that follow, the Village's Motion for Summary Judgment will be GRANTED.

## I.
### BACKGROUND

The following facts are undisputed. On January 3, 2001, Miyler was appointed Chief of Police by the Village President of East Galesburg, Illinois.[1] On July 2, 2003, pursuant to § 1-5-12(J) of the Village Code of East Galesburg, Illinois, the Village's Board of Trustees ("the Board") voted to remove Miyler from his position as chief of police with a more than two-thirds vote. See [Doc. #20-3]. He was then removed from office on July 23, 2003. His removal was based on various allegations of misconduct and he was not provided with a hearing on the

---

[1] The Chief of Police is an office appointed by the Village President, by and with the advice and consent of the Board of Trustees. See VILLAGE CODE OF EAST GALESBURG, ILLINOIS, §§ 1-5-3; 1-5B-3; and 6-1-2(A).

charges.[2]

As a result, on July 6, 2004, Miyler filed a one-count complaint against the Village for damages under 42 U.S.C. § 1983, alleging that he was deprived of a property interest in continued employment as the Village's Chief of Police when he was summarily removed from office without due process of law. In turn, the Village has now filed the instant Motion for Summary Judgment, asserting that Miyler was an "at-will" employee and, therefore, had no constitutionally protected property interest in his continued employment as chief of police.

## II.
## LEGAL STANDARD

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the responsibility of informing the Court as to portions of the record that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating "that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

---

[2] The allegations included: (1) promoting and allowing underage drinking at his home; (2) using the brickyard as a firing range; (3) receiving a traffic ticket for use of a motorcycle without a valid license; and (4) being stopped for an incident involving a minor and underage drinking. See [Doc. #20-4].

2

Once the movant has met its burden, to survive summary judgment the "nonmovant must show through specific evidence that a triable issue of fact remains on issues on which [s]he bears the burden of proof at trial." Warsco v. Preferred Tech. Group, 258 F.3d 557, 563 (7th Cir. 2001); see also Celotex Corp., 477 U.S. at 322-24. "The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence." Chemsource, Inc. v. Hub Group, Inc., 106 F.3d 1358, 1361 (7th Cir. 1997).

This Court must nonetheless "view the record and all inferences drawn from it in the light most favorable to the [non-moving party]." Holland v. Jefferson Nat. Life Ins. Co., 883 F.2d 1307, 1312 (7th Cir. 1989). In doing so, this Court is not "required to draw every conceivable inference from the record -- only those inferences that are reasonable." Bank Leumi Le-Isreal, B.M. v. Lee, 928 F.2nd 232, 236 (7th Cir. 1991). Therefore, if the record before the court "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of material fact exists and, the moving party is entitled to judgment as a matter of law. McClendon v. Indiana Sugars, Inc., 108 F.3d 789, 796 (7th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

### III.
### ANALYSIS

The Village argues that "[t]he legal issue before the Court is whether the [Board] properly removed Plaintiff by a two-thirds vote due to Plaintiff's illegal conduct while acting as police chief." [Doc. #23, pg. 1]. Fortunately, for the Village, this is not the legal issue; if it were, Plaintiff would likely prevail. Instead, the legal issue is whether Miyler has a constitutionally protected property interest in his continued employment under the due process clause of the Fourteenth Amendment.

The Fourteenth Amendment prohibits states and local governing bodies from depriving a person of life, liberty or property without due process of law. U.S. Const. amend. XIV, § 1. Thus, in examining Miyler's procedural due process claim, the Court must first determine "the *nature* of the interest at stake . . . to see if the interest is within the Fourteenth Amendment's protection of liberty and property." Board of Regents of State Colleges v. Roth, 408 U.S. 564, 571 (1972) (emphasis in original).

It is well settled to have a property interest in continued employment "a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Id. at 577. Thus, property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state [or local] law -- rules or understandings that secure

4

certain benefits and that support claims of entitlement to those benefits." Id. As such, "[p]roperty interests in employment may be created by express or implied contracts, municipal ordinances or state laws . . . ." Farmer v. Lane, 864 F.2d 473, 478 (7th Cir. 1988).

A.  **Section 3.1-35-10 of the Illinois Municipal Code does not create a constitutionally protected property interest in continued employment.**

Miyler does not argue that he is entitled to procedural due process based on any contract, manual, handbook, or oral understanding with the Village. Instead, he simply argues that § 3.1-35-10 of the Illinois Municipal Code created in him a property interest in his continued employment as the Village's Chief of Police. In support of his argument, Miyler relies solely on the Illinois Second District Appellate Court's decision in Summers v. The Village of Durand, 267 Ill. App.3d 767 (2d Dist. 1994).

In Summers, the plaintiff entered into an employment contract with the Village of Durand to serve as the defendant's chief of police in 1990. Id. at 769. The employment contract controlled times of work, salary, vacation, sick days, health benefits, pension programs and duties of the office of chief of police, but did not specify a definite term of employment. Id. A decade later, the village's board of trustees voted to terminate the plaintiff's employment. Id.

During the plaintiff's tenure as police chief, § 3-11-1 of the Illinois Municipal Code stated in pertinent part:

> [T]he Mayor may remove any officer appointed by him, under this Code, on any formal charge, whenever he is

5

of the opinion that the interests of the city demand removal, but he shall report the reasons for the removal to the council at a meeting to be held not less than 5 nor more than 10 days after the removal. If the mayor fails or refuses to report to the council the reasons for the removal, or if the council by a two-thirds vote of all its members authorized by law to be elected, disapproves of the removal, the officer thereupon shall be restored to the office from which the officer was removed.

65 ILCS 5/3-11-1 (West 1992) (repealed eff. May 13, 1993) (now codified, as amended, at 65 ILCS 5/3.1-35-10 (West 2003).[3]

As a result, the plaintiff alleged that the defendant breached his employment contract because no formal charge was ever filed against him or reported to the board of trustees prior to his termination -- violating the requirements of § 3-11-1. Summers, 267 Ill. App.3d at 770. The Summers court agreed, explaining that "laws and statutes in existence at the time a contract is executed become implied terms of that contract as a matter of law, [and] the presumption that an employment contract is terminable at will can be overcome by an applicable statutory provision that demonstrates a contrary intent." Id. (internal citations omitted).

The court went on to hold that § 3-11-1 of the Illinois Municipal Code did in fact demonstrate a contrary intent to the presumption that contracts having no stated term of employment are terminable at-will. Thus, the Summers court concluded that

---

[3] When 65 ILCS 5/3-11-1 was recodified at 65 ILCS 5/3.1-35-10, there were no major substantive changes to the statute. Instead, the statute was amended to update its terminology by eliminating gender specific words, and by replacing the following references: "mayor" with "mayor or president"; "formal charge" with "written charge"; "city" with "municipality"; and "council" with "corporate authorities".

6

the provisions of § 3-11-1 became implied terms of the plaintiff's employment contract, and failure to present formal charges to the board of trustees prior to his termination could constitute a valid claim for breach of contract. Id.

However, the Summers case is not on all fours with the instant matter, and Miyler attempts to extend its holding much too far. Unlike Summers, this is not a breach of contract case, and, contrary to Miyler's assertion, this distinction does matter.

In a breach of contract case, any failure to comply with the provisions of an employment contract (whether express or implied) can constitute a breach, even if the provision in dispute is merely procedural in nature, rather than substantive. However, "[n]ot all contractual rights in employment rise to the level of property rights." Nickum v. Village of Saybrook, 972 F. Supp. 1160, 1166 (C.D. Ill. 1997). As the Seventh Circuit has made clear:

> [i]t is by now well-established that in order to demonstrate a property interest worthy of protection under the fourteenth amendment's due process clause, a party may not simply rely upon the procedural guarantees of state law or local ordinance. In order to give rise to a constitutionally-protected property interest, a statute or ordinance must go beyond mere procedural guarantees to provide some substantive criteria limiting the state's discretion -- as can be found, for example, in a requirement that employees be fired only 'for cause.' If a statute or regulation merely delimits what procedures must be followed before an employee is fired, then it does not contain the requisite substantive predicate.

Cain v. Larson, 879 F.2d 1424, 1426 (7th Cir. 1989) (internal citations omitted); see also Bishop v. Wood, 426 U.S. 341, 345-

7

47 (1976) (no property interest where "employee is merely given certain procedural rights"); Nickum, 972 F. Supp. at 1166 (stating that "[a] contract which merely creates a right to specified procedures does not create an entitlement upon which a claim of deprivation of property without due process of law can be founded.").

In Cain, the Seventh Circuit analyzed sections of Illinois' Uniform Peace Officers' Disciplinary Act, which provided that "[n]o officer shall be subjected to interrogation without first being informed in writing of the nature of the investigation. If an administrative proceeding is instituted, the officer shall be informed beforehand of the names of all the complainants." 879 F.2d at 1426. The Act did not place any limitations on the types of conduct for which an officer may be interrogated or disciplined. Id. at 1427. The Seventh Circuit found the Act to be lacking in the kind of substantive guidelines required to give rise to a constitutionally protected property interest in a "blemish-free" employment history, and consequently dismissed plaintiff's procedural due process claim. Id.

Similarly, in the instant case, nothing in § 3.1-35-10 of the Illinois Municipal Code substantively limits the Village's discretion to fire Miyler at will. Nowhere in the statute is it specified that the chief of police may only be fired if he or she engages in certain kinds of conduct. Instead, it requires that *if* he or she is to be removed by the mayor or president, certain procedures must be followed. While these procedural guarantees may become implied terms of an employment contract, they cannot alone establish a property interest worthy of

8

constitutional protection.

This legal conclusion is further bolstered by the Illinois Supreme Court's decision in Fellhauer v. City of Geneva, 142 Ill.2d 495, 505-11 (1991), where the court declared that then § 3-11-1 of the Illinois Municipal Code, now codified at 65 ILCS 5/3.1-35-10, does not create a "for cause" employment relationship. See Fellhauer v. City of Geneva, 142 Ill.2d 495, 505-11 (1991) (declaring that the plaintiff was an "at-will" employee despite § 3-11-1 being in effect).

In Fellhauer, the plaintiff was appointed as the director of electrical services for the City of Geneva in 1974, and served in that position until he was discharged in 1986. Although the Illinois Supreme Court's analysis of § 3-11-1 was based on claims for retaliatory discharge and tortious interference, the court nevertheless concluded that the plaintiff was an "at-will" employee, and was subject to the mayor's discretionary authority under the statute "to discharge an appointed officer whenever the mayor believe[d] that discharge [was] in the municipality's best interest." Id. at 509-10; see also Kukla v. Antioch, 647 F. Supp. 799, 813 (N.D. Ill. 1986) (finding that § 3-11-1 does not grant a village police officer a constitutionally protected property interest in job security). Thus, the statute contains absolutely no substantive predicates limiting the Village's discretion to fire Miyler for any reason or no reason. See Cain, 879 F.2d at 1426. As such, § 3.1-35-10 of the Illinois Municipal Code does not create a constitutionally protected property interest in Miyler's continued employment as chief of police.

**B.  The Village ordinances do not create a constitutionally protected property interest in continued employment.**

In the alternative, Miyler argues that even if § 3.1-35-10 does not grant him a property right in his continued employment, the Village ordinances nevertheless do. He asserts that because § 1-5-12(J) of the Village Code[4] conflicts with § 3.1-35-10 of the Illinois Municipal Code, it must be rendered invalid and, therefore, stricken. However, even if the Court were to find § 1-5-12(J) to be invalid, the remainder of the Village Code does not grant Miyler a constitutionally protected property interest in his continued employment as the chief of police.

In particular, Miyler argues that §§ 1-5-12(B)[5] through (H),

---

[4] In 1928, the Village adopted the following local code provision addressing the removal of *appointed* officers:
> Any office appointed by the President and Board of Trustees may be removed from office at any time by a vote of two-thirds (2/3) of all the Trustees required by law to be elected; but the Board of Trustees may, at is option, cause charges to be preferred against such officer and proceed to hear and determine the same in the same manner as is heretofore prescribed in this Section.

VILLAGE CODE OF EAST GALESBURG, ILLINOIS, § 1-5-12(J).

[5] In 1928, the Village adopted the following local code provision addressing the removal of Village officers in general:
> Charges Preferred: Whenever it shall come to the knowledge of the President, or any member of the Board of Trustees, that any Village officer is incompetent, or has willfully neglected or refused to discharge any of the duties of his office, or has been guilty of any malfeasance, or other improper conduct in the discharge of his official duties, he shall forthwith prefer charges in writing against such officer to the Board of Trustees, specifying the nature of the offenses with which he is charged.

VILLAGE CODE OF EAST GALESBURG, ILLINOIS, § 1-5-12(B).

10

"create a detailed, specific, and elaborate process for removal of an officer and in the event of conflict, would control the more general provisions of § 1-5-12(J)." [Doc. #22, pg. 13]. Indeed, Miyler is correct in his assertion that "[a] cardinal tenet of statutory construction is that when both a specific and a general provision govern a situation, the specific one controls." [See id.] (quoting In re Gulevsky, 362 F.3d 961, 963 (7th Cir. 2004)); see also Morales v. Trans World Airlines, Inc., 504 U.S. 374, 384-85 (1992). However, another "cardinal rule of statutory construction is to ascertain and give effect to the intent of the legislature." In re Donald A.G., 221 Ill. 2d 234, 246 (2006).

Here, it is clear to the Court that not only did the Village intend for § 6-1-2(B) of the Village Code to govern the removal of the chief of police, but this same section is also the more specific and most recent code provision pertaining to the Miyler's removal. Section 6-1-2 is entitled "**Chief of Police:**" and was adopted by the Village in 1985. Subsection B refers specifically to the removal of the chief of police and states as follows:

> The Chief of Police may be removed by the President, with the advice and consent of the Board of Trustees, when, in their judgment and discretion, the corporate authorities determine that the best interests of the Village require such removal.

VILLAGE CODE OF EAST GALESBURG, ILLINOIS, § 6-1-2(B).

Much like § 3.1-35-10 of the Illinois Municipal Code, § 6-1-2(B) grants to the Village's corporate authorities full discretion to discharge the chief of police whenever they

11

believe that discharge is in the village's best interest. See Fellhauer, 142 Ill.2d at 509-10. Thus, § 6-1-2(B) contains absolutely no substantive predicates limiting the Village's discretion to fire Miyler at will.

Furthermore, to the extent that § 6-1-2(B) appears to be at odds with § 1-5-12(B), the former must govern. First of all, § 6-1-2(B) is entitled "**Chief of Police:**" and addresses the removal of the chief of police in particular, as compared to § 1-5-12(B), which addresses the removal of Village officers in general. Thus, § 6-1-2(B) is without doubt the more specific of the two provisions. See In re Gulevsky, 362 F.3d at 963 (stating that specific provisions govern over more general conflicting provisions).

In addition, at the beginning of Chapter 5 of the Village Code, which is entitled "**Government; Officers of the Village**", there is a footnote which directs the reader to "title 6, chapter 1 of [the Village] code for chief of police provisions." [Doc. #20-6, pg. 29, fn.1]. Hence, it is readily apparent that the Village intended § 6-1-2(B), rather than § 1-5-12(B), to govern all decisions to remove the chief of police from office.

Finally, as if this were not enough, the "**Preface**" to the Village Code states in relevant part:

> Ordinances and resolutions of the village adopted after said ordinance and resolution supersede the provisions of this village code to the extent that they are in conflict or inconsistent therewith.

VILLAGE CODE OF EAST GALESBURG, ILLINOIS, Preface. As the Court previously pointed out, § 1-5-12(B) was adopted by the Village in 1928. However, § 6-1-2(B), which conflicts with § 1-5-12(B),

12

was adopted by the Village in 1985. Thus, § 6-1-2(B) supersedes § 1-5-12(B) to the extent in which they are inconsistent. As such, the Village ordinances do not provide Miyler with a constitutionally protected property interest.

## IV.
## CONCLUSION

It is the opinion of this Court, that neither § 3.1-35-10 of the Illinois Municipal Code, nor the Village ordinances provide Miyler with a constitutionally protected property interest in his continued employment as chief of police. Being that there is no genuine issue of material fact in question, the Village of East Galesburg is entitled to judgment as a matter of law.

IT IS THEREFORE ORDERED that the Village's Motion for Summary Judgment [Doc. # 20] is GRANTED.

Entered this  31  day of August, 2006.

       s/ Joe Billy McDade
       JOE BILLY McDADE
   United States District Judge